[Crim. No. 22799. Aug. 6, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
LAWRENCE RICHARD GARCIA, Defendant and Appellant.

542

**COUNSEL**

Quin Denvir and Frank O. Bell, Jr., State Public Defenders, under appoinment by the Supreme Court, Edward H. Schulman, Deputy State Public Defender, Robert E. Moore, Jr., under appoinment by the Court of Appeal, and Lawrence Richard Garcia, in pro. per., for Defendant and Appellant.

John K. Van de Kamp and George Deukmejian, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Michael D. Wellington, Jay M. Bloom and A. Wells Petersen, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BROUSSARD, J.**—*Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862], held that proof of intent to kill or to aid a killing was essential to a finding of a felony-murder special circumstance under the 1978 death penalty initiative. (Pen. Code, § 190.2, subd. (a)(17).) We granted a hearing in the present case to decide whether to give retroactive effect to our *Carlos* decision and to determine the test of prejudice applicable when a trial court fails to instruct a jury in accord with that decision.

We have concluded that because the *Carlos* opinion does not overturn prior law, but stands as the first authoritative construction by this court of

the felony-murder provision of the 1978 initiative, it should apply to all cases not yet final arising under that enactment. Selecting a test of prejudice, however, presented us with a closer and more difficult question. We are persuaded, however, that under controlling decisions of the United States Supreme Court the failure to instruct upon intent as an element of a special circumstance, because it takes the issue of intent from the trier of fact, denies the defendant due process of law in violation of the Fourteenth Amendment. We further conclude that absent exceptional considerations not found in the present case the United States Supreme Court would hold such constitutional error was necessarily prejudicial. Therefore, while affirming defendant's conviction, we reverse the finding of a special circumstance under section 190.2.

## I. *Summary of facts and proceedings.*

On August 10, 1979, defendant drove Orlando Sandoval, his nephew, to a shopping center in Oxnard. Defendant stopped in front of a liquor store to let Sandoval out, then parked the car in a nearby alley. Sandoval entered the store and shot Al Wieczorek, a clerk. Wieczorek died of a bullet wound to the chest caused by a dum-dum bullet.[1] Sandoval fled the store, apparently without taking anything, got in the car, and defendant drove away.

A few days later defendant was arrested while sitting in his car. The police found the gun used to kill Wieczorek under the pillow where defendant had been sitting. Defendant waived his right to remain silent and to counsel and agreed to talk to the police, but denied involvement in the crime. After the police talked to Sandoval, however, defendant admitted that he drove Sandoval to rob the liquor store, and that he knew Sandoval had a gun with dum-dum bullets. Sandoval told him that he panicked when he entered the store, and shot the clerk.[2]

Defendant was charged with attempted robbery and murder, with the special circumstance of felony murder. The prosecution did not seek the death penalty.[3]

---

[1] A dum-dum or wad cutter bullet is a scored or soft-nosed bullet which expands on impact. Such bullets are more lethal than ordinary bullets.

[2] Sandoval was convicted of murder with special circumstances and sentenced to life imprisonment without possibility of parole. Because Sandoval was not yet 18 at the time of the offense, we granted his petition for hearing and retransferred his appeal to the Court of Appeal for reconsideration in light of *People* v. *Spears* (1983) 33 Cal.3d 279 [188 Cal.Rptr. 454, 655 P.2d 1289], which held that a person under 18 is ineligible for special circumstance proceedings.

[3] We omit discussion of the various proceedings relating to the appointment of counsel and defendant's competency to assist counsel, since defendant raised no issue concerning those matters on appeal.

At trial the prosecution introduced defendant's confession and other evidence proving defendant acted as the get-away driver for Sandoval's robbery. It also presented testimony by James Odra Smith, who was confined in jail awaiting retrial on a murder charge. Smith testified that defendant admitted to him that he furnished the gun and bullets to Sandoval. The defense, seeking to impeach Smith, presented evidence that Smith had been a police informant in numerous cases and received substantial benefits in return for his activity, including a reduction in bail on Smith's murder charge from $250,000 to $25,000. Smith also knew that defendant might be a witness for the prosecution in Smith's murder case. The defense also presented psychiatric testimony, not to show insanity or diminished capacity, but to explain that defendant would be prone to confess falsely if he thought the confession would help a relative such as Sandoval.

The jury was instructed that it should find defendant guilty of first degree murder if it found that he had the specific intent to commit robbery and that the killing occurred in an attempt to perpetrate the crime of robbery. With regard to the special circumstance, the jurors were told only that the prosecution must prove beyond a reasonable doubt that the murder was committed while the defendant was an accomplice in the attempted commission of a robbery. They were not instructed that felony-murder special circumstances required an intent to kill or to aid in a killing. The jury returned a verdict finding defendant guilty as charged of attempted robbery and first degree murder, with the special circumstance of felony murder. The court, after denying a motion for new trial, sentenced defendant to life imprisonment without possibility of parole.

II. *Issues relating to guilt.*

■ Defendant argues that his confession was induced by an implied promise of leniency, and should have been excluded. (See *People* v. *Jiminez* (1978) 21 Cal.3d 595, 611-614 [147 Cal.Rptr. 172, 580 P.2d 672].) The record shows only that one detective told defendant: "If you guys were doing a robbery, he shot the guy, he panicked or whatever, that's the price he's going to have to pay. We're going to focus our thing on him—Orlando. But there's no sense you going down the way he is, that, that far down with him, as a trigger man . . . ."

This statement does not constitute an offer of leniency on the part of the police or the prosecution in return for a confession; it advised defendant that an accomplice is generally better off than a triggerman. That was sound advice; even if we do not take *Carlos* into account, an accomplice is far less likely to receive the death penalty than the triggerman. (See *Enmund*

v. *Florida* (1982) 458 U.S. 782, 794-795 [73 L.Ed.2d 1140, 1150, 102 S.Ct. 3368].)

In *People* v. *Hill* (1967) 66 Cal.2d 536, 549 [58 Cal.Rptr. 340, 426 P.2d 908], we observed that "[t]he line to be drawn between permissible police conduct and conduct deemed to induce or to tend to induce an involuntary statement does not depend upon the bare language of inducement but rather upon the nature of the benefit to be derived by a defendant if he speaks the truth, as represented by the police. . . . When the benefit pointed out by the police to a suspect is merely that which flows naturally from a truthful and honest course of conduct, we can perceive nothing improper in such police activity." We agree with the trial court that under the reasoning of *Hill* defendant did not receive an improper inducement to confess.[4]

■ Defendant also contends that James Odra Smith was a police agent when he talked to defendant, and that Smith's testimony reporting their conversations should be excluded. Defense counsel, however, did not object to Smith's testimony at trial. Moreover, in view of defendant's confession, which established his guilt of attempted robbery and first degree murder, Smith's testimony concerning defendant's guilt of those crimes was harmless by any applicable test of prejudice.

III. *Issues relating to the special circumstance finding.*

■ In *Carlos* v. *Superior Court, supra,* 35 Cal.3d 131, we held that proof of intent to kill or to aid a killing is essential to a finding of felony-murder special circumstances under the 1978 death penalty initiative. Our decision necessarily implied that an instruction on intent to kill is required when the special circumstance issue is tried to a jury. No such instruction was given in the present case.

The effect of the *Carlos* decision upon the present case and other pending cases depends on whether that decision is given retroactive effect, and upon the standard of harmless error applied when the required intent instruction is not given. We deferred resolution of those issues in *Carlos,* believing the

---

[4]Defendant had been a police informer for over 10 years, mostly in narcotics cases. In return for his assistance, the police had from time to time interceded with the district attorney to help defendant receive favorable treatment when he was arrested on narcotic possession charges. Defendant may have hoped that by cooperating in the present case he would also obtain leniency. The officers informed him, however, that the case involved a robbery-murder, a much more serious matter than defendant's past offenses. They did not promise to speak to the district attorney on his behalf.

issues were of sufficient difficulty and importance as to call for briefing and argument in a separate case.[5]

A. *Retroactivity.*

■ In *Donaldson* v. *Superior Court* (1983) 35 Cal.3d 24, 36-37 [196 Cal.Rptr. 704, 672 P.2d 110] we explained that "In determining whether a decision should be given retroactive effect, the California courts undertake first a threshold inquiry, inquiring whether the decision established new standards or a new rule of law. If it does not establish a new rule or standards, but only elucidates and enforces prior law, no question of retroactivity arises. [Citations.] Neither is there any issue of retroactivity when we resolve a conflict between lower court decisions, or address an issue not previously presented to the courts. In all such cases the ordinary assumption of retrospective operation [citations] takes full effect."

■ Following this initial inquiry, California courts employ a tripartite test derived from *Stovall* v. *Denno* (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967] to determine the retroactive effect of a decision.[6] Under this test, the court considers three factors: "(a) the purpose to be served by the new standards, (b) the extent of reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of retroactive application of the new standards." (*Stovall* v. *Denno, supra,* 388

---

[5]*Carlos* stated: "We do not decide whether this decision will apply retroactively to cases already tried, nor do we determine what test of prejudice controls in a case in which the court erroneously failed to instruct on the necessity for intent to kill in a felony murder special circumstances under the 1978 initiative. Such questions of retroactivity and prejudice, being unnecessary to the decision of the present case, have not been briefed or argued by the parties; we therefore defer resolution of those questions to a later case." (35 Cal.3d at p. 154, fn. 21.)

[6]The tripartite test generally applies only if the decision represented a break from past practice and authority (see *Donaldson* v. *Superior Court, supra,* 35 Cal.3d 24, 38), but has occasionally been applied when the decision resolved a conflict in authority. One example is *People* v. *Yates* (1983) 34 Cal.3d 644 [194 Cal.Rptr. 765, 669 P.2d 1], in which we held that a defendant charged with first degree murder receives 26, not 10, peremptory challenges. We applied our decision prospectively (except for Yates himself and the appellant in a companion case), directing that "whether the trial court anticipated our decision and granted each side 26 challenges, or whether it limited each side to 10 challenges, the present decision should not be employed to overturn the verdict and judgment in those trials or retrials commenced before this decision becomes final." (P. 654.)

*Yates* involved a unique situation in which the court had to determine the appropriate number of peremptory challenges but recognized that, whatever the determination, the defendant was not denied a fair trial so long as he received as many challenges as the prosecution. Retrial of all cases in which the parties had received only 10 challenges would have imposed a substantial burden on the courts; yet there was no way to discover whether the additional 16 challenges would benefit the defendant more than the prosecution, or reason to believe the additional challenges would have any effect on the outcome of a case. The magnitude of the judicial burden, coupled with the absence of the slightest basis for assuming prejudice, led us to limit the retroactive effect of our decision.

U.S. 293, 297 [18 L.Ed.2d 1199, 1203]; *People* v. *Kaanehe* (1977) 19 Cal.3d 1, 10 [136 Cal.Rptr. 409, 559 P.2d 1028].) The three factors, however, are not of equal weight: "the factors of reliance and burden on the administration of justice are of significant relevance only when the question of retroactivity is a close one after the purpose of the new rule is considered." (*In re Johnson* (1970) 3 Cal.3d 404, 410 [90 Cal.Rptr. 569, 475 P.2d 841].) Under the tripartite test, when the purpose of a new rule is to deter future misconduct, or to define procedural rights collateral to a fair determination of guilt or innocence, the rule generally does not receive retroactive effect. (*Donaldson* v. *Superior Court, supra,* 35 Cal.3d 24, 38, 39.) On the other hand, when a decision goes to the integrity of the fact finding process (*People* v. *Kaanehe, supra,* 19 Cal.3d 1, 10), or "implicates questions of guilt and innocence" (*Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238, 258 [158 Cal.Rptr. 330, 599 P.2d 636]), retroactivity is the norm.

■ In the present case both the threshold inquiry and the tripartite test lead to the conclusion that the *Carlos* decision should be given retroactive effect. That decision addressed a question of first impression in this court. Decisions of the Courts of Appeal, reaching differing conclusions, were vacated by the grant of a hearing here. Thus there was never a final, authoritative opinion of a California appellate court holding that a defendant could be subject to a felony-murder special circumstance even though he lacked any intent to kill. *Carlos* therefore did not constitute a clear break from the past—the overthrow of an established rule and the establishment of a new rule. Instead, it falls within the category of decisions generally given retrospective application.

Moreover, under the tripartite test, the purpose of a judicial decision is the most significant factor in determining its retroactive effect. The purpose of *Carlos* was to carry out the intent of the 1978 act of avoiding imposition of the death penalty or life imprisonment without possibility of parole upon persons who did not intend to kill. ■ Whenever a decision undertakes to vindicate the original meaning of an enactment, putting into effect the policy intended from its inception, retroactive application is essential to accomplish that aim. (See *People* v. *Mutch* (1971) 4 Cal.3d 389, 395-396 [93 Cal.Rptr. 721, 482 P.2d 633].) ■ If in addition, as in the present case, the decision represents the first authoritative construction of the enactment, no history of extended and justified reliance upon a contrary interpretation will arise to argue against retroactivity. Under these circumstances, the burden on the courts incurred in the retrial of the special circumstance issue is insufficient to tip the balance against retroactivity. The *Carlos* holding should apply retroactively to all cases not yet final.[6A]

---

[6A]The question of the application of *Carlos* to final judgments is not directly presented in this case, and we express no view on that question.

B. *Prejudicial error.*

We requested the parties to brief the various state and federal tests of prejudicial error. After review of the briefs and arguments presented, we have concluded that this case is controlled by a line of United States Supreme Court decisions beginning with *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068] and continuing through *Sandstrom* v. *Montana* (1979) 442 U.S. 510 [61 L.Ed.2d 39, 99 S.Ct. 2450] and *Connecticut* v. *Johnson* (1983) 460 U.S. 73 [74 L.Ed.2d 823, 103 S.Ct. 969]. Although these decisions involve the constitutionality of state practices relating to presumptions and burdens of proof, they contain language and reasoning which indicate that instructions or omissions which deny a defendant his right to have the jury decide each element of a charged offense are necessarily reversible error.

*In re Winship, supra,* 397 U.S. 358 held that when a juvenile was charged with a criminal offense, the state must prove guilt beyond a reasonable doubt. (397 U.S. at p. 364 [25 L.Ed.2d at p. 375].) *Mullaney* v. *Wilbur* (1975) 421 U.S. 684 [44 L.Ed.2d 508, 95 S.Ct. 1881], then held unconstitutional a Maine statute which classified all intentional homicide as murder unless the defendant proved by a preponderance of the evidence that he acted in the heat of passion on sudden provocation. The potentially broad scope of that holding, however, was soon restricted when in *Patterson* v. *New York* (1977) 432 U.S. 197 [53 L.Ed.2d 281, 97 S.Ct. 2319] the court held that a statute placing the burden of proving extreme emotional disturbance on the defendant did not deny due process. Proof of extreme emotional disturbance, the court reasoned, was not necessary to prove commission of the crime (see 432 U.S. at p. 206 [53 L.Ed.2d at p. 289]) but a separate issue (p. 207 [53 L.Ed.2d at p. 290]).

*Sandstrom* v. *Montana, supra,* 442 U.S. 510, is the key decision in this line of authority. *Sandstrom* was a murder prosecution with a diminished capacity defense in which the court instructed the jury that " '[t]he law presumed that a person intends the ordinary consequences of his voluntary acts.' " (P. 517 [61 L.Ed.2d at p. 46].) *Sandstrom* quotes *Winship* to the effect that " 'the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of *every fact* necessary to constitute the crime with which he is charged.' " (P. 520 [61 L.Ed.2d at p. 48], quoting 397 U.S. 358, 364 [25 L.Ed.2d 368, 375, 90 S.Ct. 1068].) The constitutional defect in the jury instruction, it says, was that "Sandstrom's jurors could reasonably have concluded that they were directed to find against defendant on the element of intent. The State was thus not forced to prove 'beyond a reasonable doubt . . . every fact necessary to constitute the crime . . . charged.' " (P. 523 [61 L.Ed.2d at pp. 550-551].)

Even if the presumption did not direct a verdict, but only shifted the burden of proof, it would still violate the requirement that " 'a State must prove every ingredient of an offense beyond a reasonable doubt, and . . . may not shift the burden of proof to the defendant.' " (P. 524 [61 L.Ed.2d at p. 51], quoting *Patterson* v. *New York, supra,* 432 U.S. 197, 215 [53 L.Ed.2d 281, 295].)[7]

■ The United States Supreme Court decisions make it clear that when intent is an element of a crime, an instruction directing the jury to find or conclusively presume intent denies due process, regardless of the weight of the evidence. An instruction putting the burden of proof on the defendant is equally infirm. The reasoning of the opinions, however, goes beyond inquiry into presumptions, burdens of proof, and other procedural analogs to a directed verdict. That reasoning would invalidate any instruction or failure to instruct which would permit the state to circumvent the requirement that it prove every fact necessary for conviction beyond a reasonable doubt. (See *In re Winship, supra,* 397 U.S. 358, 364 [25 L.Ed.2d 368, 375].) Thus a failure to instruct on the element of intent, because it would permit the jury to find guilt without proof of intent beyond a reasonable doubt, would constitute a denial of due process.

■ The jury in the present case was instructed that to find a special circumstance of felony murder, "it must be proved that the murder was committed while the defendant was an accomplice in the attempted commission of a robbery." That instruction necessarily implied that the jury could find the special circumstance true even if defendant did not intend to kill or to aid in a killing, but intended only to participate in an attempted robbery. It removed the issue of intent from the jury as effectively as if the jury had been told expressly that intent was not an issue, or was conclusively presumed against defendant. Under the reasoning of *Sandstrom,* defendant was denied due process of law under the Fourteenth Amendment.

---

[7]The parties cite other federal cases of lesser moment. The public defender points to *Presnell* v. *Georgia* (1978) 439 U.S. 14 [58 L.Ed.2d 207, 99 S.Ct. 235], which held that it is a denial of due process to convict a defendant upon an offense not charged. (Accord, *In re Hess* (1955) 45 Cal.2d 171, 174-175 [288 P.2d 5].) The Attorney General cites *Hopper* v. *Evans* (1982) 456 U.S. 605 [72 L.Ed.2d 367, 102 S.Ct. 2049], which found no denial of due process in a trial court's failure to instruct on a lesser offense of unintentional homicide when the defendant admitted an intentional killing. Both are distinguishable from the present setting, which involves instructions on the special circumstance charged, not an uncharged or lesser crime.

A number of California cases (e.g., *People* v. *Mayberry* (1975) 15 Cal.3d 143, 157-158 [125 Cal.Rptr. 745, 542 P.2d 1337]; *People* v. *Sedeno* (1974) 10 Cal.3d 703, 720 [112 Cal.Rptr. 1, 518 P.2d 913]; *People* v. *Modesto* (1963) 59 Cal.2d 722, 730 [31 Cal.Rptr. 225, 382 P.2d 33]) hold that failure to instruct on the elements of a crime, a lesser included offense, or an affirmative defense constitute a denial of the constitutional right to jury trial. None of the cases distinguishes between the federal and the state constitutional right to jury trial, and none rely on federal authority to frame a test of prejudice.

Seeking to distinguish *Sandstrom,* the Attorney General argues that a special circumstance is not a "crime," and an element of a special circumstance thus is not an "element of a crime." His argument is technically sound; special circumstances are *sui generis*—neither a crime, an enhancement, nor a sentencing factor. We have, however, noted the resemblance between a special circumstance proceeding and a trial to determine guilt. In *People* v. *Superior Court (Engert)* (1982) 31 Cal.3d 797, 803 [183 Cal.Rptr. 800, 647 P.2d 76], we said: "In the California scheme the special circumstance is not just an aggravating factor: it is a fact or set of facts, found beyond reasonable doubt by a unanimous verdict (Pen. Code, § 190.4), which changes the crime from one punishable by imprisonment of 25 years to life to one which must be punished either by death or life imprisonment without possibility of parole. The fact or set of facts to be found in regard to the special circumstance is not less crucial to the potential for deprivation of liberty on the part of the accused than are the elements of the underlying crime which, when found by a jury, define the crime rather than a lesser included offense or component." (Fn. omitted.) *Engert* therefore held that the standards of specificity applicable to statutes defining criminal offenses applied equally to special circumstances. On similar grounds *Ghent* v. *Superior Court* (1979) 90 Cal.App.3d 944 [153 Cal.Rptr. 720] rejected the claim that special circumstances are analogous to enhancements and held that, like criminal charges, a special circumstance allegation could be challenged under section 995. We endorsed that holding in *Ramos* v. *Superior Court* (1982) 32 Cal.3d 26, 32-33 [184 Cal.Rptr. 622, 648 P.2d 589].

As we noted in *Carlos* v. *Superior Court, supra,* 35 Cal.3d 131, 134, "[a] finding of murder with special circumstances *requires* the trier of fact to choose between only two alternatives—death or life imprisonment without possibility of parole—the most severe punishments permitted under our law." It is, moreover, an essential prerequisite to the imposition of the unique and extreme sanction of death. In view of the importance of a special circumstance finding, we do not believe the courts can extend a defendant less protection with regard to the elements of a special circumstance than for the elements of a criminal charge. If failure to instruct on the element of a crime is a denial of federal due process, the same consequence should attend failure to instruct on the element of a special circumstance.

The test of prejudice for *Sandstrom* error is yet to be formulated. When the issue reached the United States Supreme Court in *Connecticut* v. *Johnson, supra,* 460 U.S. 73 [74 L.Ed.2d 823, 103 S.Ct. 969], that court divided evenly. Justice Blackmun, joined by Justices Brennan, Marshall, and White, took the position that *Sandstrom* error would be harmless only in rare cases, such as one in which the defendant conceded the issue of intent;

in all other cases, the conviction must be reversed regardless of the weight of the evidence. Justice Powell, joined by the Chief Justice, Justice Rehnquist and Justice O'Connor, argued in favor of the *Chapman* standard, under which federal constitutional error does not require reversal if "harmless beyond a reasonable doubt." (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 711, 87 S.Ct. 824, 24 A.L.R.3d 1065].) Justice Stevens, the tie-breaking vote, did not address the test of prejudice required by the federal Constitution; he maintained that Connecticut's application of a test requiring per se reversal violated no federal rights even if it went beyond federal constitutional requirements. Justice Stevens thus voted with the majority to affirm the Connecticut court's reversal of defendant's conviction for attempted murder.[8]

The trial court in *Connecticut* v. *Johnson* had instructed the jury that " 'every person is conclusively presumed to intend the natural and necessary consequences of his act.' " (P. 78 [74 L.Ed.2d at p. 829, 103 S.Ct. at p. 973].) The plurality opinion by Justice Blackmun reasoned that this instruction was the equivalent of a directed verdict on the issue of intent, and that since a directed verdict is impermissible regardless of the weight of the evidence, the conviction must be reversed despite overwhelming evidence of guilt. "An erroneous presumption on a disputed element of the crime renders irrelevant the evidence on the issue because the jury may have relied upon the presumption rather than upon that evidence. If the jury may have failed to consider evidence of intent, a reviewing court cannot hold that the error did not contribute to the verdict." (Pp. 85-86, fn. omitted [74 L.Ed.2d at p. 833, 103 S.Ct. at p. 977].)

The dissent agreed that an instruction which "removes an issue completely from the jury's consideration" (P. 95 [74 L.Ed.2d at p. 839, 103 S.Ct. at p. 982]) would require automatic reversal, but maintained that the instruction given by the Connecticut judge did not go that far. Unlike a directed verdict, argued the dissent, the Connecticut presumption did not take the issue wholly from the jury. That presumption established only that the defendant intended the natural and necessary consequences of his acts, leaving it to the jury to determine the nature of those consequences.

The dissent, as we read it, draws a fine distinction. It concedes that an instruction which operated independently from the evidence, directing or permitting the jury to find intent without examining that evidence, would be reversible per se. On the other hand, it asserts, a presumption which

---

[8]Since *Connecticut* v. *Johnson* did not decide the standard of prejudice, the lower federal circuits have continued to follow their prior cases, most of which employed the *Chapman* standard. (See *Brooks* v. *Francis* (11th Cir. 1983) 716 F.2d 780, 794; *Engle* v. *Koehler* (6th Cir. 1983) 707 F.2d 241, 246; *Healy* v. *Maggio* (5th Cir. 1983) 706 F.2d 698, 701.)

takes effect only if the jury finds certain preliminary facts does not permit the jury to avoid examining the evidence and should therefore be subject to a less stringent standard of prejudice. As Justice Powell explained, "The jury must look to the evidence initially to see if the basic facts have been proved before it can consider whether it is appropriate to apply the presumption . . . . If . . . those basic facts are themselves dispositive of intent, the presumption becomes unnecessary to the jury's task of finding intent. Because the presumption does not remove the issue of intent from a jury's consideration, it does not preclude a reviewing court from determining whether the error was 'harmless beyond a reasonable doubt.'" (P. 97 [74 L.Ed.2d at p. 840, 103 S.Ct. at pp. 982-983].)

The dissent's distinction leads us to conclude that at least eight justices of the United States Supreme Court (all except Justice Stevens, who took no position on the issue) agree that a jury instruction which does take an issue completely from the jury is reversible per se. We have no doubt that they would reach the same conclusion if the error was one of omission—failing to submit the issue of intent to the jury. Both forms of error have the same effect: removing the issue wholly from jury determination, and thus denying defendant the right to jury trial on the element of the charge.

It is clear that the instructional error in the present case completely eliminated the issue of intent to kill from the consideration of the jury. Unlike the presumption at issue in *Sandstrom* and *Connecticut v. Johnson*, the instructions here did not require the jury to examine evidence which bore on intent and which might make use of a presumption unnecessary. Instead, the jury was told simply if it found that the murder was committed while defendant was an accomplice to an attempted robbery, it should find the special circumstance true. The only intent relevant to such a finding was defendant's intent to aid in a robbery, and that was already established by defendant's confession. We conclude that the United States Supreme Court would find the error in the present case reversible per se.[9]

The plurality opinion in *Connecticut v. Johnson* described two exceptions to its rule of per se reversal: "if the erroneous instruction was given in connection with an offense for which the defendant was acquitted and if the instruction had no bearing on the offense for which he was con-

---

[9]The recent decision in *People v. Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318] invalidated a form jury instruction which erroneously permitted a person to be convicted as an accomplice without proof that he intended to aid in the commission of the offense. We observed that although the error arising from the failure to require intent "is not identical to a conclusive presumption or to placing the burden of persuasion on the defendant [citing *Connecticut v. Johnson*], it is just as effective—if not more effective—in removing the issue of intent from the jury's consideration." (P. 562, fn. 4.)

victed," and "if the defendant conceded the issue of intent." (P. 87 [74 L.Ed.2d at p. 834, 103 S.Ct. at pp. 977-978].) California experience with a similar test of prejudicial error established in *People* v. *Modesto, supra,* 59 Cal.2d 722,[10] indicates that additional exceptions may be appropriate. In *People* v. *Sedeno, supra,* 10 Cal.3d 703, 721, we explained that "in some circumstances it is possible to determine that although an instruction . . . was erroneously omitted, the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions. In such cases the issue should not be deemed to have been removed from the jury's consideration since it has been resolved in another context, and there can be no prejudice to the defendant . . . ."[11] We believe that, in an appropriate case, the United States Supreme Court would accept this exception to the automatic reversal standard.

Two later decisions, *People* v. *Cantrell* (1973) 8 Cal.3d 672, 685 [105 Cal.Rptr. 792, 504 P.2d 1256] and *People* v. *Thornton* (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523 P.2d 267] relaxed the rigidity of the *Modesto* rule. *Cantrell* was a murder case in which the defendant had confessed to killing a juvenile who had objected to defendant's sexual advances. The defense was diminished capacity, and the trial court instructed on manslaughter as a lesser offense only as it might be the result of diminished capacity. Defendant objected to the failure to instruct generally on voluntary and involuntary manslaughter. The court rejected that contention, stating that "[t]he rule requiring the court to instruct the jury upon every material question upon which there is any evidence whatsoever deserving of consideration [citing *Modesto*] does not imply instructions should be given on issues and questions not raised by the evidence." (8 Cal.3d at p. 685.)

*People* v. *Thornton* involved the retroactive application of *People* v. *Daniels* (1969) 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677], which held that substantial asportation which increased the risk of harm to the victim was an element of Penal Code section 209 kidnaping. Thornton was convicted of kidnaping (and many other crimes) before *Dan-*

---

[10]To avoid possible misunderstanding, we reiterate that we decide the present case on the basis of federal precedent. We take no position on whether, in the absence of controlling federal authority, we would apply the California prejudicial per se test of *Modesto* or some other, less stringent, test.

[11]This exception is important in special circumstance cases under the 1978 death penalty initiative. While the felony-murder special circumstance (Pen. Code, § 190.2, subd. (a)(17)) was silent on intent to kill, some other special circumstances expressly require an intentional killing. (See, e.g., Pen. Code, § 190.2, subd. (a)(15), which describes as a special circumstance that "[t]he defendant intentionally killed the victim while lying in wait.") If a correctly instructed jury found intent to kill under some other special circumstance, the failure to instruct on intent to kill under the felony-murder special circumstance might not be reversible error.

*iels.* The majority, by Justice Sullivan, affirmed the kidnaping conviction on the ground that, on the appellate record, it was clear that the asportation met the *Daniels* standard. Justice Mosk dissented, arguing that the *Modesto* rule should apply to instructional error relating to an essential element of the offense. (11 Cal.3d, pp. 771-772.)

The majority responded to the Mosk dissent in a lengthy footnote. (Fn. 20, pp. 768-769.) They stated that "*Modesto* and *Sedeno* indeed hold that 'a defendant has a constitutional right to have the jury determine every material issue presented by the evidence' . . . and that the failure to instruct on such an issue is prejudicial per se. Such a 'material issue' is 'presented by the evidence' within the meaning of those cases when the record contains 'any evidence deserving of any consideration whatsoever' relative to it. . . . In the instant case we hold as a matter of law that defendant's acts constituted section 209 kidnaping under *Daniels* . . . and that there is no evidence worthy of consideration to the contrary."

In many cases it will be difficult to apply the *Cantrell-Thornton* analysis to *Carlos* error. If the defendant in a pre-*Carlos* trial was unaware that intent to kill was an element of the felony-murder special circumstance, he might through ignorance fail to present evidence worthy of consideration on that matter. We could not in such cases affirm a special circumstance finding on the ground that defendant did not introduce evidence sufficient to raise a material issue. But there may also be cases where the parties recognized that intent to kill was in issue, presented all evidence at their command on that issue, and in which the record not only establishes the necessary intent as a matter of law but shows the contrary evidence not worthy of consideration.[12] In such a case the reasoning of *Cantrell* and *Thornton* may avoid a meaningless retrial.

We are uncertain whether the United States Supreme Court will endorse the *Cantrell-Thornton* exception to its apparent rule favoring automatic reversal. The four dissenting justices in *Connecticut v. Johnson, supra,* 460 U.S. 73 [74 L.Ed.2d 823, 103 S.Ct. 969], accused the plurality of requiring "reversals of convictions in many situations in which the defendant's actions establish intent as conclusively as if it were unequivocally conceded." (Pp. 98-99 [74 L.Ed.2d at p. 842, 103 S.Ct. at p. 984].) The plurality did not respond to this charge. The making of the accusation suggests that four justices of the court would be sympathetic to a limited exception that would avoid retrial in some cases in which the evidence unequivocally and conclu-

[12]We note, for example, that the issue of intent may arise in connection with a prosecution attempt to prove first degree murder without reliance on the felony-murder rule, in connection with some special circumstance which expressly requires intent to kill, or at the penalty phase where lack of intent would be a mitigating factor.

sively established intent, but leaves it uncertain whether a majority would take that position. Accordingly, pending further guidance from the United States Supreme Court, we will apply the reasoning of *Cantrell* and *Thornton* only to those cases clearly falling within the ambit of that reasoning so as not to detract substantially from the per se character of the high court's rule.

 In any event, the present case does not fall within any of the exceptions to automatic reversal. The omitted instruction on intent related to the special circumstance found to be true, not to some crime or special circumstance of which defendant was acquitted. Defendant did not concede intent. The jury did not find that he intended to kill in connection with some other, proper instruction. And the evidence does not come close to establishing intent to kill as a matter of law.

Defendant did not shoot the victim and was not present in the store at the time of the shooting. The fact that he agreed to aid a robbery, knowing his companion was armed, is insufficient to demonstrate that defendant himself intended to aid a killing. (*Carlos* v. *Superior Court, supra,* 35 Cal.3d 131, 151; see *Enmund* v. *Florida* (1982) 458 U.S. 782 [73 L.Ed.2d 1140, 102 S.Ct. 3368].) The testimony of Smith that defendant supplied dum-dum bullets to Sandoval raises the possibility that defendant intended Sandoval would shoot to kill during the robbery. But this testimony is equivocal, raising at best a possible inference of intent to aid a killing, and it comes from a witness whose credibility is in serious doubt. Whatever the scope of the *Cantrell-Thornton* exception to automatic reversal, it is clear that the case at hand does not fall within that exception. The finding of the felony-murder special circumstance must therefore be reversed.

 Defendant argues that we should not only reverse the special circumstances finding, but should bar retrial on that allegation. He points out that in *Carlos,* on very similar facts, we held the evidence was insufficient to constitute probable cause to try Carlos on the special circumstance allegations. Recognizing that in many cases tried before *Carlos* insufficiency of the evidence to show intent to kill might be the result of the prosecution's failure to realize that proof of intent was essential, he argues that his case is different because he was charged with premeditated murder as well as felony murder. Consequently, he argues, in his case the prosecution must be deemed to have introduced all the evidence it had to show intent and premeditation, and since that evidence would be insufficient to support a finding of intent to kill, retrial of that issue is unnecessary.

We agree with the defendant that the evidence presented may be insufficient to support a finding of intent to kill, but think it unrealistic to assume

that the prosecution, with a perfect case for proof of felony murder, necessarily presented all available evidence relating to intent. ██ ██ ██ ██ ██ We therefore reverse the special circumstance finding without directions, permitting the prosecution to seek retrial of that issue.[13]

The judgment convicting defendant of murder and attempted robbery is affirmed, the finding of a special circumstance under Penal Code section 190.2, subdivision (a)(17) is set aside, and the cause is remanded to the superior court for further proceedings.

Kaus, J., Reynoso, J., Grodin, J., and Brown (G. A.), J.,* concurred.

**BIRD, C. J.,** Concurring and Dissenting.—I agree with the majority opinion, but I have one significant reservation. I cannot agree with the majority's decision to elevate the reasoning of *Cantrell*[1] and *Thornton*[2] to create a categorical exception to the "per se reversal" rule. The majority's newly created "*Cantrell-Thornton* exception" constitutes a clear invasion by the appellate courts of the exclusive province of the jury.

Justice Mosk, joined by the late Justice Tobriner, pointed out in his dissent in *Thornton* that the rule set forth in that case was wrong. As Justice Mosk so aptly expressed, *Thornton* is the classic "hard case" which makes bad law. (*Thornton, supra,* 11 Cal.3d at p. 783 (dis. opn. of Mosk, J.).) By adopting *Thornton* here, the majority perpetuate that mistake and substitute this court's judgment for that of the jury.

Under our system of justice, juries *alone* have been entrusted with the responsibility of determining guilt or innocence. (*Weiler* v. *United States* (1945) 323 U.S. 606, 611 [89 L.Ed. 495, 499, 65 S.Ct. 548, 156 A.L.R. 496].) An accused "has a constitutional right to have the jury determine every material issue presented by the evidence. Regardless of how overwhelming the evidence of guilt may be, the denial of such a fundamental right . . . is a miscarriage of justice . . . ." (*People* v. *Modesto* (1963) 59

---

[13]Under the circumstances of this case, retrial of the special circumstance allegation is not barred by constitutional protections against double jeopardy. As we explained in *People* v. *Shirley* (1982) 31 Cal.3d 18, 71 [181 Cal.Rptr. 243, 641 P.2d 775], "'reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case.' [Citing *Burks* v. *United States* (1978) 437 U.S. 1, 15 (57 L.Ed.2d 1, 12, 98 S.Ct. 2141).] Rather, the matter is governed by the settled rule that the double jeopardy clause does not prohibit retrial after a reversal premised on error of law."

*Assigned by the Chairperson of the Judicial Council.

[1]*People* v. *Cantrell* (1973) 8 Cal.3d 672 [105 Cal.Rptr. 792, 504 P.2d 1256].

[2]*People* v. *Thornton* (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523 P.2d 267].

Cal.2d 722, 730 [31 Cal.Rptr. 225, 382 P.2d 33]; see also *People* v. *Sedeno* (1974) 10 Cal.3d 703, 720 [112 Cal.Rptr. 1, 518 P.2d 913].)

Even the majority recognize that the courts cannot "extend a defendant less protection with regard to the elements of a special circumstance than for the elements of a criminal charge." (Maj. opn., *ante,* at p. 552.) However, under the majority's *Cantrell-Thornton* exception, it is an appellate court that will determine whether the accused entertained the intent to kill required when a felony-murder special circumstance is charged.

The majority apply the *Cantrell-Thornton* exception to all cases "where the parties recognized that intent to kill was in issue, presented all evidence at their command on that issue, and in which the record not only establishes the necessary intent as a matter of law but shows the contrary evidence not worthy of consideration." (Maj. opn., *ante,* at p. 556.)

The appellate court will have to divine whether (1) the litigants recognized that an intent to kill was in issue; (2) the parties presented all the evidence at their command; and (3) the evidence established the requisite intent. Giving an appellate court this role undermines the jury's power to determine whether an accused entertained the intent to kill that is a prerequisite to a finding of a felony-murder special circumstance.

The majority recognize that if a jury is not instructed that intent is an element of any felony-murder special circumstance, that issue is essentially removed from a jury's consideration. As a result, the accused is denied the right to a jury trial on an element of the special circumstance allegation. (See maj. opn., *ante,* at p. 554.) The majority accept a "per se reversal" rule for *Carlos*[3] error, yet they carve out an exception to that rule as it pertains to the issue of intent in a felony-murder special circumstance allegation. Such a rule defies logic.

The Supreme Court, in *Connecticut* v. *Johnson* (1983) 460 U.S. 73 [74 L.Ed.2d 823, 103 S.Ct. 969], stated that "[i]f the jury may have failed to consider evidence of intent, a reviewing court *cannot* hold that the error did *not* contribute to the verdict. The fact that the reviewing court may view the evidence of intent as overwhelming is then simply irrelevant. *To allow a reviewing court to perform the jury's function of evaluating the evidence of intent, when the jury never may have performed that function, would give too much weight to society's interest in punishing the guilty and too little weight to the method by which decisions of guilt are to be made.*" (*Id.,* at p. 86, fn. omitted [74 L.Ed.2d at pp. 833-834, 103 S.Ct. at p. 977], italics

---

[3] *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862].

added [hereafter *Johnson*].) Clearly, the *Cantrell-Thornton* exception would not pass muster under this precedent.[4]

I cannot endorse a holding which substitutes the belief of appellate judges for a jury's finding as to the truth of a special circumstance allegation. (See *Bollenbach* v. *United States* (1946) 326 U.S. 607, 615 [90 L.Ed. 350, 355, 66 S.Ct. 402].)

Mosk, J., concurred.

Appellant's petition for a rehearing was denied October 29, 1984, and the opinion was modified to read as printed above. Bird, C. J., and Lucas, J., were of the opinion that the petition should be granted.

---

[4]The majority assert that the four dissenting justices in *Johnson* would be "sympathetic" (maj. opn., *ante,* at p. 556) to such an exception. However, the *Johnson* dissent explicitly distinguished the case it had before it from cases where the jury was prevented from considering the issue of intent. (*Johnson, supra,* 460 U.S. at pp. 96-97, and fn. 3 [74 L.Ed.2d at p. 840, 103 S.Ct. at pp. 982-983] (dis. opn. of Powell, J.).) Moreover, the dissent indicated that if "an execution-style slaying occurred, in which the defendant tied up his victim and shot him repeatedly in the head, it would be clear beyond a reasonable doubt that the presence of a conclusive presumption instruction would not have affected *a jury's finding of intent.*" (*Id.,* at p. 99 [74 L.Ed.2d at p. 842, 103 S.Ct. at p. 984], italics added.) The dissent's statement was directed only to those cases where the jury had *explicitly* determined the issue of intent. Thus, it is doubtful that a majority of the Supreme Court would accept the *Cantrell-Thornton* exception which this court carves out today.