[Crim. No. 44393. Second Dist., Div. Five. Oct. 24, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTONIO TOVAR, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Therene Powell, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Howard J. Schwab, Susanne C. Wylie and Donald J. Oeser, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HASTINGS, J.**—Following a jury trial, the defendant Antonio Tovar, was found guilty of robbery (Pen. Code, § 211). He was sentenced to state prison for the low base term of two years. He appeals contending (1) that

the trial court was required to instruct the jury *sua sponte* that it must agree unanimously on which act constituted the robbery and (2) that the trial court erred in failing to instruct the jury that aiding and abetting requires proof of an intent to aid and abet.

At around 9 p.m. on November 20, 1982, Ramon Gonzalez left a restaurant and met two men, one of whom was defendant. Defendant asked Gonzalez if he had any marijuana. When Gonzalez said no, defendant replied, "Give me the money." When Gonzalez told defendant that he didn't have any money, defendant grabbed Gonzalez from behind, hit him, and took two envelopes out of his back pocket. One contained a $50 bill and the other contained papers for his car. Defendant took the $50 bill and threw the papers back. The other man took a golden chain that Gonzalez was wearing around his neck, breaking it as he grabbed it. The two men then left the area.

Gonzalez flagged down a policeman who was driving by and told him what had happened. The two men were crossing the street at the time, and Gonzalez pointed them out to the officer.

After talking with Gonzalez the officer went over to the two men (later identified as defendant and Gilbert Diaz) who were sitting on a stone wall. As he approached them, he saw Diaz throw an object which looked like a small chain over his shoulder. Gonzalez had indicated that he had lost a chain. The officer was able to locate it about 10 feet from where the 2 men were sitting. The officer then arrested defendant and Diaz.

At the police station, after defendant waived his constitutional rights, the officer told defendant that the victim had stated that defendant and Diaz had robbed him and that Diaz had ripped a chain from his throat while defendant held him. Defendant replied, "Oh yeah, well where is the money at then, man?"

The officer said that he had not said anything about money. Defendant then looked like he had been "punched . . . right in the face" and said, "I don't want to talk to you any more."

On behalf of defendant, Diaz testified that he never saw defendant hit Gonzalez or go through his pockets; that after defendant had talked with Gonzalez about 5 to 15 minutes, he, Diaz, took the chain. He had not told defendant he was going to do this. Defendant saw him take the chain but did not say anything. Later, when the police pulled up, he threw the chain away. He also stated that at the police station, he never had an opportunity to explain that defendant had nothing to do with the crime.

Defendant testified that he and his friend had finished playing pool when he saw Gonzalez in front of the pool hall. He asked Gonzalez for a dime for a phone call. When Gonzalez indicated that he didn't have one, he said, "All right, thanks a lot," turned around and started walking. He realized Diaz was not with him and he turned back, saying "Are you coming or going?" Diaz said, "No, I'll be with you." When he turned around again, Gonzalez was gone.

Defendant stated that he never saw the chain pulled off Gonzalez' neck and he did not see Diaz throw the chain away. Later, when he saw the police, it did not particularly worry him.

Defendant further testified that he did not take anything from Gonzalez, was not aware Diaz had taken anything from him and did not say to the officer at the police station, "Well, where's the money, then?"

On rebuttal, Officer Di Matteo testified Diaz would not waive his constitutional rights and refused to talk about the incident.

■ Defendant contends that his conviction should be reversed because it might have been based on an aiding and abetting theory and the trial court erroneously instructed the jury in the language of CALJIC Nos. 3.00 and 3.01. These instructions define, respectively, aiding and abetting and principals.

CALJIC No. 3.01 (1980 rev.) provides: "A person aids and abets the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator of the crime, he aids, promotes, encourages or instigates by act or advice the commission of such crime. [Mere presence at the scene of a crime and failure to take steps to prevent a crime do not in themselves establish aiding and abetting.]"

CALJIC No. 3.00 (1981 revision) provides: "The persons concerned in the commission [or attempted commission] of a crime who are regarded by law as principals in the crime thus committed [or attempted] and equally guilty thereof include:

"1. Those who directly and actively commit [or attempt to commit] the act constituting the crime, or

"[2. Those who, with knowledge of the unlawful purpose of the person who directly and actively commits [or attempts to commit] the crime, aid and abet in its commission [or attempted commission],] [or]

"[One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and reasonable or probable consequences of any act that he knowingly aided or encouraged.]"

In *People* v. *Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318], our Supreme Court recently held that the definition of aiding and abetting in CALJIC No. 3.01, is erroneous in that it fails to adequately inform the jury of the criminal intent required to convict a criminal accused as an aider and abettor. It appears that CALJIC No. 3.00 suffers from the same defect.

The *Beeman* court explained "that the weight of authority and sound law require proof that an aider and abettor act with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense. [Citations.] [¶] When the definition of the offense includes the intent to do some act or achieve some consequence beyond the *actus reus* of the crime [citation], the aider and abettor must share the specific intent of the perpetrator. . . . [A]n aider and abettor will 'share' the perpetrator's specific intent when he or she knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime. [Citations.]" (35 Cal.3d at p. 560, italics in original.)

The Supreme Court discussed several possible tests for determining whether the error in CALJIC No. 3.01 requires reversal. (*Id.* at pp. 561-563.) The court declined to announce a general rule,[1] concluding only that in the circumstance of the case before it the defense presented by Beeman hinged on the very distinction between knowledge and intent as to which the jury was inadequately instructed, and reversal was required even under

[1]In *People* v. *Johnson* (Cal.App.), the court concluded that reversal should be automatic. (The Supreme Court granted a hearing July 26, 1984.)

In *People* v. *Darwiche* (Cal.App.), the court determined the appropriate test of prejudice should be the harmless error test of *People* v. *Watson, supra,* because *Beeman* does not address any constitutional issues. (The Supreme Court granted a hearing May 24, 1984.)

In *People* v. *Parker* (Cal.App.), the court affirmed the conviction of the defendant stating that "regardless of whether the standard for review is that set forth in *People* v. *Watson, supra,* 46 Cal.2d 818, 836, or in *Chapman* v. *California,* 386 U.S. 18, 24 . . ., defendant could not have been prejudiced . . . ." (The Supreme Court ordered this opinion to be nonpublished Aug. 23, 1984.)

In *People* v. *Olson* (Cal.App.), the court concluded that the error was not reversible under either *Watson* or *Chapman.* (The Supreme Court ordered this opinion to be nonpublished July 26, 1984.)

In *People* v. *Davis* (Cal.App.), the court determined the error was not prejudicial to defendant under the *Watson* standard or the more stringent standard of harmless beyond a reasonable doubt. (The Supreme Court has ordered this opinion to be nonpublished.)

the ordinary error test of *People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].)

As in *Beeman,* the error in the present case requires reversal even under the *Watson* standard. Three theories of the robbery were presented to the jury: (1) The victim testified that defendant grabbed him from behind, took an envelope containing $50 and that Diaz ripped the chain off his neck. (2) Diaz testified defendant did not know he was going to take the chain from Gonzalez and that defendant merely stood by, saying nothing, while he took the chain. Diaz further stated that he did not see defendant hit Gonzalez or take anything from him. (3) Defendant denied taking anything from Gonzalez and stated that he never even saw Gonzalez pull the chain off Gonzalez' neck because he had already started to walk away.

Although the police found the torn chain, the money was never recovered. The jury could have believed Diaz and found that defendant did not act with the intent of encouraging or facilitating the planning or commission of the robbery of the chain. Under these circumstances, the jury was inadequately instructed, and we cannot find the error harmless.

By letter dated September 24, 1984, the Attorney General raises the issue of whether *Beeman* should be applied retroactively. Before *Beeman,* three lines of cases had developed regarding the required mental state of an aider and abettor. In *People* v. *Yarber* (1979) 90 Cal.App.3d 895 [153 Cal.Rptr. 875], the court held that it was necessary for an aider and abettor to share the criminal intent of the perpetrator.

Another line of cases held that there is no separate intent requirement in aiding and abetting cases. (*People* v. *Green* (1982) 130 Cal.App.3d 1 [181 Cal.Rptr. 507].) The *Green* court held "the only facts necessary to convict a person of aiding and abetting are (1) that the person aid in the commission of a crime (2) with knowledge of the perpetrator's unlawful purpose or intent." (*Id.* at p. 6.)

Finally, a third line of cases had held an instruction on intent is required "only where a reasonable inference can be drawn from the evidence that despite defendant's knowledge of the perpetrator's wrongful purpose, defendant acted for an independent lawful purpose." (*People* v. *Francis* (1982) 129 Cal.App.3d 241, 256 [180 Cal.Rptr. 873].)

*Beeman* resolved the conflict by adopting the *Yarber* analysis.

▮ Because the Supreme Court resolved a conflict between lower court decisions and did not establish a new rule or standard, no issue of retroac-

tivity arises and "the ordinary assumption of retroactive operation" applies. (*Donaldson* v. *Superior Court* (1983) 35 Cal.3d 24, 37 [196 Cal.Rptr. 704, 672 P.2d 110].)

Since the judgment must be reversed, it is not necessary to discuss defendant's other contention as to whether the trial court was required to instruct the jury *sua sponte* that it must agree unanimously on which act (the taking of the $50 bill and the snatching of the chain from the victim's neck) constituted robbery.

The judgment is reversed.

Feinerman, P. J., and Ashby, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 3, 1985.