[No. F003730. Fifth Dist. June 27, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
ALEJANDRO G. GONZALES, Defendant and Appellant.

[No. F003910. Fifth Dist. June 27, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID MAGOON, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of the "FACTS" and part II.

800

COUNSEL

Allen R. Crown and Frank O. Bell, Jr., State Public Defender, under appointments by the Court of Appeal, and Roy M. Dahlberg, Deputy State Public Defender, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Robert D. Marshall, Roger E. Venturi, Gelacio L. Bayani, Anthony Dicce and Ward A. Campbell, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

MARTIN, J.—On August 10, 1983, the Fresno County District Attorney filed an information in superior court charging defendants as follows: count I—the murder of Edgar Quince Horn (Pen. Code, § 187)[1] and count II—attempted robbery (§§ 664, 211). The district attorney alleged a special circumstance in conjunction with count I, charging defendants committed murder during the commission of an attempted robbery (§ 190.2, subd. (a)(17)(i)). The district attorney also alleged defendants personally used a dangerous and deadly weapon (a rock) in conjunction with the crimes charged in counts I and II. (§ 12022, subd. (b).)

The trial court ordered defendants' trials severed and defendant Magoon was tried first. The jury found defendant guilty on all counts, fixed the murder conviction as first degree murder and found all special allegations to be true. The trial court subsequently granted defendant's motion for modification of the verdict by striking the special circumstance (§ 190.2, subd. (a)(17)(i)). Defendant was sentenced to state prison on the murder count for the term of 25 years to life plus a consecutive 1-year term for personal use of a dangerous and deadly weapon. The court stayed all other sentences pursuant to section 654.

At defendant Gonzales's trial, the jury found defendant guilty on all counts, fixed the murder conviction as first degree and found all special allegations to be true. Later, the trial court modified the verdict by striking the special circumstance and sentenced defendant to state prison for the term of 25 years to life on count I. The court also imposed a consecutive one-year term for personal use of a dangerous and deadly weapon. The court stayed all other sentences pursuant to section 654.

Each defendant filed a timely notice of appeal. This court consolidated defendants' cases for hearing on appeal.

---

[1] All further statutory references will be to the Penal Code unless otherwise indicated.

Facts*

. . . . . . . . . . . . . . . . . . . . . . . .

## Discussion

## I. Did the Trial Court Commit Prejudicial Error by Failing to Instruct on the Intent Element of Aiding and Abetting Pursuant to People v. Beeman?

█ Defendants each contend the trial court committed reversible error by failing to instruct on aiding and abetting pursuant to *People* v. *Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318].

CALJIC No. 3.00, as read to the jury at each trial, provides: "The persons concerned in the commission [or attempted commission] of a crime who are regarded by law as principals in the crime thus committed [or attempted] and equally guilty thereof include:

"1. Those who directly and actively commit [or attempt to commit] the act constituting the crime, or

"[2. Those who, with knowledge of the unlawful purpose of the person who directly and actively commits [or attempts to commit] the crime, aid and abet in its commission [or attempted commission].]

"⸴ . . . . . . . . . . . . . . . . . . .

"[One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and reasonable or probable consequences´ of any act that he knowingly aided or encouraged.]"

CALJIC No. 3.01, as read to the jury at each trial, provides: "A person aids and abets the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator of the crime, he aids, promotes, encourages or instigates by act or advice the commission of such crime.

"[Mere presence at the scene of a crime which does not in itself assist the commission of the crime does not amount to aiding and abetting.]

---

*See footnote, *ante,* page 799.

"[Mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting.]"[2]

CALJIC No. 8.27, as read to the jury at each trial, provides: "If a human being is killed by any one of several persons engaged in the perpetration of, or attempt to perpetrate, the crime of robbery, all persons who either directly and actively commit the act constituting such crime or who with knowledge of the unlawful purpose of the perpetrator of the crime aid, promote, encourage, or instigate by act or advice its commission, are guilty of murder of the first degree, whether the killing is intentional, unintentional, or accidental."

In *People* v. *Beeman, supra*, 35 Cal.3d 547, 560-563, the Supreme Court analyzed CALJIC Nos. 3.00 and 3.01 and concluded the weight of authority and sound law require proof an aider and abettor acted with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense. When the definition of the offense includes the intent to do some act or achieve some consequence beyond the *actus reus* of the crime, the aider and abettor must share the specific intent of the perpetrator. The court held an aider and abettor will "share" the perpetrator's specific intent when he or she knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime. The liability of an aider and abettor extends also to the natural and reasonable consequences of the acts he knowingly and intentionally aids and encourages.

 The Supreme Court held CALJIC No. 3.01 inadequately defined aiding and abetting because it failed to ensure an aider and abettor would be found to have the required mental state. The court suggested an appropriate instruction which the CALJIC committee adopted in the 1984 revision of

---

[2] At each trial, the court read the 1981 revision of CALJIC No. 3.00 and the 1980 revision of CALJIC No. 3.01. These instructions were revised in 1984. CALJIC No. 3.00 now provides in relevant part:

"The persons concerned in the [commission] [or] [attempted commission] of a crime who are regarded by law as principals in the crime thus [committed] [or] [attempted] and equally guilty thereof include:

"1. Those who directly and actively [commit] [or] [attempt to commit] the act constituting the crime, or

"2. Those who aid and abet the [commission] [or] [attempted commission] of the crime."

CALJIC No. 3.01 now provides in relevant part: "A person aids and abets the [commission] [or] [attempted commission] of a crime when he or she, (1) with knowledge of the unlawful purpose of the perpetrator and (2) with the intent or purpose of committing, encouraging, or facilitating the commission of the offense, by act or advice aids, promotes, encourages or instigates the commission of the crime."

CALJIC No. 3.01. The court reversed Beeman's convictions under *Watson*[3] and expressly declined to decide whether failure to instruct on criminal intent should generally be reviewed under the stricter rule of harmless error.

Thereafter, the Supreme Court decided *People* v. *Croy* (1985) 41 Cal.3d 1 [221 Cal.Rptr. 592, 710 P.2d 392]. In *Croy*, the jury again was instructed on aiding and abetting under the old CALJIC Nos. 3.00 and 3.01. The *Croy* court concluded a *Beeman* error amounts to reversible error per se unless the case falls into one of four exceptions delineated in *People* v. *Garcia* (1984) 36 Cal.3d 539, 554-556 [205 Cal.Rptr. 265, 684 P.2d 826], certiorari denied 469 U.S. 1229 [84 L.Ed.2d 366, 105 S.Ct. 1229]: (1) if the erroneous instruction was given in connection with an offense for which defendant was acquitted and if the instruction had no bearing on the offense for which he was convicted; (2) if the defendant conceded the issue of intent; (3) where it is possible to determine although the instruction was erroneously omitted, the factual question posed by the omission was necessarily resolved adversely to the defendant under other, properly given instructions in another context; and (4) when the parties recognized intent was in issue, presented all evidence at their command on that issue and the record not only established the necessary intent as a matter of law but showed the contrary evidence not worthy of consideration. (*People* v. *Croy, supra*, 41 Cal.3d at p. 13.)

The court analyzed and applied these standards in the first degree murder case of *People* v. *Leach* (1985) 41 Cal.3d 92, 104-106 [221 Cal.Rptr. 826, 710 P.2d 893]. There the trial court instructed the jury on aiding and abetting in the language of former CALJIC No. 3.01. The Supreme Court found *Leach* to be a case in which the *Beeman* error could not possibly have affected the verdict. The prosecution's evidence indicated Leach was the principal perpetrator of the offenses and not simply an aider and abettor. If the jury accepted this evidence, the aiding and abetting instruction would not have been applicable at all. In Leach's version of the events, he did not know of his friend's intent to rob the victim and did not aid in the commission of the robbery or killing. On this state of the record, no reasonable trier of fact, having found defendant acted with requisite knowledge, could at the same time have concluded defendant did not act to facilitate or encourage the crime. Further, because the jury specifically found Leach personally used a deadly/dangerous weapon in the commission of the robbery, it must have rejected his version of the incident. In view of the record and the use finding, there was no possibility Leach aided the commission of the robbery other than intentionally.

---

[3] *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], certiorari denied 355 U.S. 846 [2 L.Ed.2d 55, 78 S.Ct. 70].

Under the prosecution's theory of the instant cases, defendants were both perpetrators of the attempted robbery and killing of Horn. If the juries accepted that theory, they would have had no reason to consider the aiding and abetting instructions at all. Nevertheless, because the aiding and abetting instructions were given and the juries theoretically could have reached their verdicts on an aiding and abetting theory, this court must determine whether the error calls for reversal. (*People* v. *Leach, supra*, 41 Cal.3d 92, 104.)

### A. Defendant Alejandro Gonzales

■ In response to a request for supplemental briefing, defendant Gonzales argues: "Since the jury could have decided that, whatever effect his intoxication may have had on his mental processes, Gonzales was at least capable of *knowing* Magoon's intention, it had no reason whatsoever to consider that intoxication further. Indeed, it is possible the jury decided that Gonzales was so intoxicated he could not form the intents [*sic*] to kill or take, the malice element of murder, and still have convicted him of that crime based solely on a determination that he could know what Magoon was doing. [¶] Because the jury was allowed to reach its verdict without considering the effect of intoxication on Gonzales's ability to intend the acts or to share Magoon's intent, Gonsales [*sic*] was denied the right to have the jury decide the truth of all the elements of the offense and the conviction must be reversed. No aspect of *Croy* alters this conclusion."

The People concede the first two *Croy* exceptions are inapplicable in Gonzales's case. However, they maintain the trial court did not commit prejudicial error in light of the remaining two exceptions.

Under the third exception, a *Beeman* error is not reversible per se where it is possible to determine the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions in another context. Here, the jury convicted Gonzales of first degree felony murder and attempted robbery, and found a robbery-murder special circumstance to be true. The court instructed the jury in the language of CALJIC No. 8.80 as follows: "If you find the defendant in this case guilty of murder of the first degree, you must then determine if murder was committed under the following special circumstance; murder in the commission of a robbery. [¶] A special circumstance must be proved beyond a reasonable doubt. [¶] If you have a reasonable doubt as to whether a special circumstance is true, it is your duty to find that it is not true. [¶] If the defendant was not the actual killer, it must be proved beyond a reasonable doubt that *he intentionally aided, abetted, counseled, commanded, induced, solicited, requested or assisted the actual killer*

*in the commission of the murder in the first degree before you are permitted to find the alleged special circumstance of the first degree murder to be true as to the defendant.* [¶] In order to find the special circumstance charged in this case to be true or untrue, you must agree unanimously. [¶] You will include in your verdict on a form that will be supplied your finding as to whether the special circumstance is or is not true." (Italics added.)

The court also instructed the jury in the language of CALJIC No. 8.81.17 as follows: "To find that the special circumstance, referred to in these instructions as murder in the commission of robbery, is true, it must be proved: [¶] 1. That the murder was committed while the defendant was engaged in or was an accomplice in the commission or attempted commission of the robbery. [¶] 2. *That the murder was committed in order to carry out or advance the commission of the crime of robbery or to facilitate the escape therefrom or to avoid detection.* [¶] In other words, the special circumstance referred to in these instructions is not established if the attempted robbery was merely incidental to the commission of the murder." (Italics added.)

The People conclude: "Thus, in finding the robbery-murder special circumstance true, the jury at least concluded that if Gonzales was 'the actual killer' that he committed the murder 'in order to carry out or advance the commission of the crime of robbery . . . .' Thus, it must have concluded that appellant 'intended to rob' victim Horn. (See, *People* v. *Whitt* (1984) 36 Cal.3d 724, 736.) [¶] On the other hand, if the jury did not believe that Gonzales was the 'actual killer,' [*sic*] it still concluded that he 'intentionally [assisted] the actual killer in the commission of a murder in the first degree . . . .' In conjunction with the jury's finding that appellant knew of his accomplice's criminal purpose to rob, the jury must have concluded that appellant at least intended to rob Horn. (See, *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131, 142; *People* v. *Forbes* (1985) 175 Cal.App.3d 807, 814.)"

The fact the trial court struck the special circumstance finding against Gonzales pursuant to *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862] is not helpful here. In *Carlos*, the Supreme Court held proof of intent to kill or to aid a killing is essential to sustain a felony-murder special-circumstance allegation under the 1978 death penalty law. The particular intent required by *Beeman* is distinguishable from that required by *Carlos*. *(People* v. *Croy, supra,* 41 Cal.3d at pp. 12-14.)

█ A defendant whose liability is predicated on his status as an aider and abettor need not have intended to encourage or facilitate the particular offense ultimately committed by the perpetrator. His knowledge an act

which is criminal was intended, and his action taken with the intent the act be encouraged or facilitated, are sufficient to impose liability on him for any reasonably foreseeable offense committed as a consequence by the perpetrator. It is the intent to encourage and bring about conduct that is criminal, not the specific intent that is an element of the target offense, which *Beeman* holds must be found by the jury. (*People* v. *Croy, supra,* 41 Cal.3d at p. 12, fn. 5.) ■■■ The lower court properly instructed the jury on the mental element of aiding and abetting murder (CALJIC Nos. 8.80 and 8.81.17). As the People noted, if (a) the jury concluded defendant intentionally aided and abetted commission of the murder to facilitate the robbery and (b) the jury found defendant knew of the perpetrator's criminal purpose to rob, then (c) the jury must have concluded defendant intentionally aided and abetted commission of the robbery. Although CALJIC Nos. 3.00 and 3.01 omitted the intent element required by *Beeman*, the factual question posed by the omission was necessarily resolved adversely to the defendant under CALJIC Nos. 8.80 and 8.81.17.

The People further contend the facts of the instant case satisfy the fourth exception announced in *People* v. *Garcia, supra,* 36 Cal.3d at pages 554-556 [205 Cal.Rptr. 265, 684 P.2d 826] and restated in *Croy*, the so-called *Cantrell-Thornton* exception. (*People* v. *Cantrell* (1973) 8 Cal.3d 672 [105 Cal.Rptr. 792, 504 P.2d 1256], disapproved on another point in *People* v. *Wetmore* (1978) 22 Cal.3d 318, 323-325 [149 Cal.Rptr. 265, 583 P.2d 1308]; *People* v. *Thornton* (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523 P.2d 267], disapproved on another point in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684-685, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].) The Supreme Court explained in *Croy*: "In *Beeman* cases, as in *Carlos* cases, the error consists of failing to instruct the jury that it must find a particular intent in order to find guilt, and to that extent the analysis of prejudice is the same. There is an important difference, however: the instruction condemned in *Beeman*, unlike the pre-*Carlos* special circumstance instructions, did not entirely remove the question of the defendant's mental state from the jury's consideration. . . . [¶] This difference justifies an adaptation, in the *Beeman* context, of the *Cantrell-Thornton* exception retained in *Garcia*: the parties at least recognized that the defendant's state of mind was at issue, so that a defendant who only accidentally or unintentionally aided the commission of a crime, or otherwise acted without the requisite intent, had a substantial incentive to place such evidence before the jury, frequently in conjunction with a claim that he had no knowledge of the perpetrator's unlawful purpose. . . . Since, under former CALJIC No. 3.01, the jury could convict a defendant on an aiding and abetting theory only if it found that he acted with knowledge of the perpetrator's criminal intent, it may be possible in those cases for a court to determine that the *Beeman* error could not possibly have affected the verdict—i.e., that no reasonable trier of fact, having

actually found the requisite knowledge, could at the same time have concluded that the defendant did not act for the purpose of facilitating or encouraging the crime. In those cases the judgment could be affirmed." (*People* v. *Croy, supra*, 41 Cal.3d 1, 13-14.)

As noted above, in *Leach*, the defendant was charged with robbery and murder stemming from a drug sale. The prosecution argued Leach was the instigator and planner of the crimes and had involved several of his friends in a brutal attack on the victim. Defendant testified he had no part in the robbery or murder and did not know of any unlawful intent on the part of his friends. The court instructed the jury on premeditated murder and felony murder in addition to conspiracy and aiding and abetting under former CALJIC No. 3.01. Relying on *Croy*, the Supreme Court concluded the *Beeman* error could not have affected the verdict. The court initially noted the jury could have convicted defendant as the perpetrator of the murder rather than as an aider and abettor. The court concluded: "... [I]n Leach's version of the events, he did not even know of Jones' intent to rob and certainly did not commit nor in any way aid in the commission of either the robbery or the killing. On this state of the record, no reasonable trier of fact, having actually found that defendant acted with the requisite knowledge, 'could at the same time have concluded that the defendant did not act for the purpose of facilitating or encouraging the crime.' " (*People* v. *Leach, supra*, 41 Cal.3d at p. 105.)

Furthermore, the court held it clear the jury must have rejected Leach's version of the incident because the jury specifically found he personally used a deadly or dangerous weapon in the commission of the robbery. Under the trial court's instructions, the use finding meant the jury found Leach had displayed such a weapon in an intentionally menacing manner or he intentionally struck or hit a human being with it. The Supreme Court stated: "Although it is perhaps theoretically conceivable that an individual could personally use a deadly weapon and still not intend to facilitate an on-going crime, under no view of the evidence presented in this case could such a 'personal use' finding be squared with Leach's testimony. In short, on this record and in view of the use finding there is no possibility that the jury could have found that Leach 'aided' the commission of the robbery other than intentionally. We find no reversible error." (*Id.* at p. 106.)

Similarly, the jury in Gonzales's trial found he "personally used" a deadly and dangerous weapon in committing the felony murder of Edgar Horn. Abelino Ramirez testified defendant Gonzales hit Horn with a rock at least five times, choked him, and punched and kicked his body. On this state of the record, no reasonable trier of fact, having actually found defendant acted with the requisite knowledge, could at the same time have concluded

defendant did not act for the purpose of facilitating or encouraging the crime. Further, in view of the use finding, there is no possibility the jury could have found Gonzales "aided" the commission of the crime other than intentionally.

The trial court did not commit reversible error by instructing in the language of former CALJIC Nos. 3.00 and 3.01.

### B. Defendant David Magoon

In response to the request for supplemental briefing, defendant Magoon argues: "In the instant case, appellant Magoon was convicted of murder and of attempted robbery—both based upon his complicity in the attempted theft from Mr. Horn. The jury was instructed on not only the erroneous definition of aider and abettor but also the erroneous definition of aider and abettor as applied to first degree felony murder.... The instructional error on the law of aiding and abetting is reversible per se unless there is an applicable exception. There is not."

The People contend the third and fourth exceptions set forth in *Croy* are also applicable in defendant Magoon's case. As in Gonzales's trial, the Magoon trial court instructed the jury in the language of CALJIC No. 8.80 (special circumstances—introductory) and CALJIC No. 8.81.17 (special circumstances—murder and commission of robbery). The People argue in finding the robbery-murder special circumstance true, the jury at least concluded if Magoon was the "actual killer" he committed the murder "in order to carry out or advance the commission of the crime of robbery...." Thus, the jury must have concluded Magoon "intended to rob" the victim Horn. On the other hand, if the jury did not believe Magoon was the "actual killer," then it concluded he "intentionally aided, abetted, counseled, commanded, induced, solicited, requested or assisted the actual killer in the commission of the murder in the first degree...." In light of the various instructions given, the jury must have concluded defendant Magoon knew of Gonzales's criminal purpose to rob (CALJIC Nos. 3.00, 3.01), and *intentionally* aided, abetted, or assisted the actual killer in the commission of first degree murder (CALJIC No. 8.80) to carry out or advance the commission of robbery or to facilitate the escape therefrom or to avoid detection (CALJIC No. 8.81.17).

The People also contend the *Cantrell-Thornton* exception applies in Magoon's case. As in *Leach*, the prosecutor contended Magoon was a perpetrator of the murder and not simply an aider and abettor. If the jury accepted this evidence, the aiding and abetting instructions would have been inapplicable. (*People* v. *Leach, supra,* 41 Cal.3d at p. 105.) As in *Leach,*

defendant Magoon contended he did not know Gonzales intended to rob Horn. The jury rejected Magoon's defense of noninvolvement by convicting him of both felony murder and attempted robbery. The jury also found Magoon personally used a dangerous and deadly weapon in the commission of the murder. The People properly conclude "... it is not conceivable that Magoon could personally use a deadly weapon and not intend to facilitate a crime which he knew was occurring. (*People* v. *Leach, supra*, 41 Cal.3d at 105; compare *People* v. *Croy, supra*, 41 Cal.3d at 16.)"

We conclude the third and fourth exceptions outlined in *People* v. *Croy, supra*, are applicable in defendant Magoon's case upon the same analysis as in defendant Gonzales's case (*ante*) and the trial court did not commit reversible error under *People* v. *Beeman, supra*.

II. WERE DEFENDANT MAGOON'S CONVICTIONS OF FIRST DEGREE MURDER AND ATTEMPTED ROBBERY SUPPORTED BY SUBSTANTIAL EVIDENCE?*

. . . . . . . . . . . . . . . . . . . .

The judgments are affirmed.

Franson, Acting P. J., and Best, J., concurred.

The petition of appellant Gonzales for review by the Supreme Court was denied September 17, 1987.

---

* See footnote, *ante*, page 799.