Filed 6/28/21  P. v. Rogers CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B303800 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A383323) |
| v. | |
| MORRIS ROGERS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mark S. Arnold, Judge.  Reversed and remanded with directions.

Derek K. Kowata, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Daniel C. Chang and Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

A jury convicted Morris Rogers of one count of second degree murder (Pen. Code,[1] §§ 187, subd. (a), 189) and two counts of assault with a deadly weapon (§ 245, subd. (a)(1)). The jury found not true the allegation that he personally used a firearm (§ 12022.5), but found true the allegation that a principal was armed with a firearm (§ 12022, subd. (a)). Rogers was sentenced to 21 years to life in state prison.

In 2018, Rogers sought resentencing relief pursuant to section 1170.95.[2] On December 6, 2019, the superior court found that Rogers failed to make a prima facie case for relief and denied his petition. It found Rogers was not entitled to relief because he directly aided and abetted in the murder and because the natural and probable consequences theory was not presented as a basis for the jury's verdict.

On appeal, Rogers argues that the superior court erred in not issuing an order to show cause and in impermissibly weighing the evidence during the court's prima facie review. As we describe below, because the record does not show as a matter of law that Rogers was guilty of murder under a still-valid theory, we conclude the superior court erred in denying Rogers's section 1170.95 petition. We reverse with instructions for the superior court to issue an order to show cause and conduct a hearing pursuant to section 1170.95, subdivision (d).

---

[1] All unspecified statutory references are to the Penal Code.

[2] Rogers filed a petition for writ of habeas corpus, which the trial court treated as a petition for section 1170.95 resentencing relief.

## BACKGROUND

### A. Factual Summary

We provide a truncated summary of the facts derived from our ruling on Rogers's 2001 petition for writ of habeas corpus, *People v. Rogers* (Jan. 9, 2003, B148541) (*Rogers*), which, in turn, derived facts from our direct appeal opinion, *People v. Smith* (Jun. 12, 1985, 2d Crim. No. 45051) [nonpub. opn.].

Rogers, Frederick Butler, Virgil Gulley, Raymond Flynn, Avery Smith, Vernon Nash, and Eric Morgan were members of a gang known as the 90th Street Hoover Crips. On May 24, 1982, they expressed a desire for revenge upon another gang, the 92nd Street Hoover Crips. Rogers said he "wanted to knock somebody out." According to Butler, this meant that Rogers wanted to fight. Smith displayed a gun to fellow gang member Gulley and said, "I'm ready to get off now," meaning that he wanted to shoot someone. Someone else said that he wanted to "check out the 92nd Street gang," meaning that he wanted to engage in a fight. (*Rogers*, *supra*, B148541, at pp. 2-3.)

That evening, the group went to the vicinity of 95th Street and Hoover. Rogers, Flynn, and Smith stood in the driveway of an auto wrecking yard, and the others stayed back, near a neighboring apartment house. (*Rogers*, *supra*, B148541, at p. 3.)

Butler saw Rogers, Flynn, and Smith standing side by side with their arms outstretched. He saw all three men holding guns. He heard four to five shots and saw flashes from Flynn's and Smith's guns. He did not see who fired the first shot and did not see all three fire shots but to deflect suspicion from himself, he told the police that he saw all three shoot. (*Rogers*, *supra*, B148541, at p. 3.)

3

Gulley saw Rogers, Flynn, and Smith with a gun that night.  At the preliminary hearing, however, he could not recall anyone other than Smith having a gun.  (*Rogers*, *supra*, B148541, at p. 3.)

Tyran Martin was visiting with Charles Poole and Kim Gaines when the shooting began.  He was wounded in the shoulder and leg.  There were three or four guns that fired 10 to 15 shots.  Martin could not tell how many people were shooting.  (*Rogers*, *supra*, B148541, at p. 4.)

Poole, who is known as "Squirrel," was seated in his car when he heard what sounded like firecrackers.  Gaines fell onto him.  Poole looked toward the auto wrecking yard, where he saw flashes of gunfire.  He saw more than one and possibly three guns.  Gaines died as a result of the shooting.  Poole suffered gunshot wounds to the abdomen and leg.  (*Rogers*, *supra*, B148541, at p. 4.)

After the shooting, the group fled the scene.  Rogers and Smith encountered William Fray.  Rogers pointed a gun at Fray from a distance of three feet.  (*Rogers*, *supra*, B148541, at p. 4.)

While running from the scene, Flynn boasted to Gulley, "Yeah that was Squirrel out there.  I shot . . . Squirrel." (*Rogers*, *supra*, B148541, at p. 5.)

Rogers, Flynn, and Smith were charged with Gaines's murder and assault with a deadly weapon on Poole and Martin.  Butler and Gulley were granted immunity to testify for the prosecution.  (*Rogers*, *supra*, B148541, at p. 5.)

## B.    Trial and Direct Appeal

At trial, the People did not attempt to establish which defendant shot Gaines.  Although the court instructed on natural and probable consequences liability for murder, the People did

4

not argue that theory to the jury. Rather, the People argued each of the defendants were principals and equally guilty because they aided and abetted in the commission of the murder.

The trial court instructed the jury pursuant to CALJIC Nos. 3.00, which defined principals, and 3.01, which set forth the elements for aiding and abetting. In part, CALJIC No. 3.00 instructed that, "One who aids and abets is not only guilty as a principal of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable as a principal for the natural and reasonable or probable consequences of any act that he knowingly aided or encouraged."

As to CALJIC No. 3.01, the trial court instructed the jury that "A person aids and abets the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator of the crime, he aids, promotes, encourages or instigates by act or advice the commission of such crime."

The jury convicted Rogers, Flynn, and Smith of second degree murder as to Gaines and two counts of assault with a deadly weapon as to Poole and Martin. They found true the allegation that Smith and Flynn personally used a firearm, but did not find that allegation true as to Rogers. The jury also found true the allegation that a principal was armed with a firearm.

This court affirmed the judgment against Rogers and his codefendants on June 12, 1985.[3] On direct appeal, all three defendants argued that the court's use of CALJIC Nos. 3.00 and 3.01 was erroneous under *People v. Beeman* (1984) 35 Cal.3d 547 (*Beeman*). (*People v. Smith, et al., supra*, 2d Crim. No. 45051.) In

---

[3] We remanded the matter for resentencing due to an error in Flynn's sentence.

*Beeman*, our Supreme Court held that CALJIC No. 3.01 was defective because the instruction did not explicitly state that an aider or abettor must have the intent or purpose either of committing, or of encouraging or facilitating commission of, the offense. (*Beeman*, *supra*, at p. 560.) We concluded that CALJIC No. 3.00 suffered from the same defect, citing *People v. Caldwell* (1984) 36 Cal.3d 210, 223-224.

We agreed that the trial court committed instructional error under *Beeman*, but found the error to be harmless.[4] Notably, we stated that all three defendants shot at Gaines and that the jury had found true the allegation that all three defendants personally used a firearm. (*People v. Smith, et al.*, *supra*, 2d Crim No. 45051, at pp. 6-7, 20.) As we later determined, these factual findings were erroneous.

## C.    Habeas Corpus Proceedings

In 2001, Rogers filed a petition for writ of habeas corpus alleging ineffective assistance of appellate counsel. He argued counsel failed to raise errors "which ultimately mislead this court on direct appeal in reaching unreasonable factual findings regarding the *Beeman* error claim."

---

[4] In our direct appeal opinion, we conducted our harmless error analysis pursuant to *People v. Garcia* (1984) 36 Cal.3d 539. (See *People v. Smith, et al.*, *supra*, 2d Crim. No. 45051, at p. 6.) Thereafter, our Supreme Court held that in cases of *Beeman* error, we should apply the higher harmless error standard as articulated in *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 17 L.Ed.2d 705]. (*People v. Dyer* (1988) 45 Cal.3d 26, 64.) In our 2003 denial of Rogers's petition for writ of habeas corpus, we applied the *Chapman* standard and acknowledged the *Garcia* standard was no longer applicable.

On January 9, 2003, this court issued an order denying the habeas petition. (*Rogers*, *supra*, B148541.) In that order, we acknowledged that our harmless error analysis on direct appeal as to Rogers was based on factual mistakes, concluding that "[t]he evidence does *not* establish as a matter of law that he was one of the shooters. . . . [¶] Based upon [the] evidence, the jury found to be not true, as to Rogers, all allegations that he personally used a firearm." (*Id.* at p. 7.)

Nonetheless, we again determined the *Beeman* error was harmless. We noted that the evidence established that Rogers sought revenge for a fellow gang member; he wanted to fight members of the rival gang; and he was present when Smith expressed a desire to kill rival gang members. Further, there was evidence from which the jury could conclude that Rogers went to the site of the shooting with a handgun and pointed it as if he intended to shoot, "as well as inconsistent statements from the same witnesses that would cast doubt on at least the latter part of that conclusion." We found Rogers's mere presence encouraged the shootings, and he actively collaborated with the group to go forth and seek revenge. We concluded, "The evidence against Rogers is susceptible of but a single interpretation: he accompanied the others to the site of the shooting knowing they at least intended to assault rival gang members and intending to encourage and facilitate that criminal conduct. The evidence therefore establishes Rogers's intent as a matter of law, and there is no contrary evidence worthy of consideration." (*Rogers*, *supra*, B148541, at p. 9.)

**D. Section 1170.95 Petition**

On October 17, 2018, Rogers filed a petition with the superior court seeking resentencing relief pursuant to section

7

1170.95. The court appointed counsel, and the parties submitted opposition and reply briefs. To their briefs, the parties attached relevant portions of our direct appeal opinion and a complete copy of our 2003 order.[5] The parties presented a portion of the trial transcript to the court, which included the court's instructions to the jury and counsel's closing arguments.

On December 6, 2019, the court denied Rogers's section 1170.95 petition. In describing the salient facts in its ruling, the court observed that the three defendants discussed a desire for revenge, a witness saw three people pointing guns at rival gang members, and shots were fired. Fray testified that he encountered Rogers as Rogers left the scene of the shooting and that Rogers pointed a gun at him. The court stated that, "[t]his is not a natural and probable consequences case. A natural and probable consequences case is one where the suspect intends to commit a target crime, but a different crime then occurs. Under natural and probable consequences, the suspects would be liable for the crime that occurred if it was a natural and probable consequence of the target crime. In this case, the intent was to seek revenge against rival gang members, which was why the defendant and the codefendants were armed. This is a direct

_____

[5] Rogers attached a copy of CALJIC No. 3.00 (1976 rev.) and CALJIC No. 3.01 (1974 rev.) to his reply brief. It is not clear whether these records are from Rogers's trial. The text of these instructions differ in insubstantial ways from the instructions the court read to the jury. The appellate record also includes one page of the amended abstract of judgment dated August 25, 1999. The clerk of the Los Angeles County Superior Court was unable to find a copy of the accusatory pleading, the abstract of judgment, or the probation officer's report.

aider and abettor case." The court dismissed the petition without issuing an order to show cause.

Rogers timely appealed the order.

## DISCUSSION

### A.    Legal Framework

Prior to the enactment of Senate Bill No. 1437, a defendant who aided and abetted a crime that resulted in a victim's death could be convicted of murder under a natural and probable consequences theory even if the defendant did not act with malice. (*People v. Offley* (2020) 48 Cal.App.5th 588, 595.) The Legislature enacted Senate Bill No. 1437 "to amend the felony murder rule[6] and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)

Senate Bill No. 1437 did not alter the viability of a murder conviction based on direct aiding and abetting liability. (*People v. Offley*, *supra*, 48 Cal.App.5th at p. 596 ["One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law"].) For direct aider and abettor liability, "the aider and abettor must possess malice aforethought." (*People v. Gentile* (2020) 10 Cal.5th 830, 844; see *People v. McCoy* (2001) 25 Cal.4th 1111, 1118 [one who directly aids and abets in murder "must

---

[6] The felony murder rule is not at issue in this appeal.

9

know and share the murderous intent of the actual perpetrator"].)

Senate Bill No. 1437 also enacted section 1170.95, which provides a vehicle for persons who were convicted of murder pursuant to a now invalidated theory to petition to have their conviction vacated and to be resentenced. (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1135, review granted Mar. 18, 2020, S260598; see § 1170.95 subd. (a).)

Section 1170.95 sets forth a multistep decision-making process. First, a petitioner must make a prima facie showing that he was " 'convicted of felony murder or murder under a natural and probable consequences theory,' " and that " 'all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' " (*People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1164, citing § 1170.95, subd. (a).)

At these initial stages, "the 'trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law . . . . [I]f the record "contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner." [Citation.] However,

this authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, [subdivision] (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion . . . .' [Citation.]" (*People v. Nguyen, supra*, 53 Cal.App.5th at pp. 1165-1166.)  A petitioner fails to establish a prima facie showing if the petition is untrue as a matter of law.  (*Ibid.*; see *People v. Swanson* (2020) 57 Cal.App.5th 604, 612, review granted Feb. 17, 2021, S266262 [stating that the "contents of the record of conviction defeat a prima facie showing when the record shows as a matter of law that the petitioner is not eligible for relief"]; but see *People v. Garcia* (2020) 57 Cal.App.5th 100, 116, review granted Feb. 10, 2021, S265692 ["The trial court should not accept the petitioner's assertions as true and issue an order to show cause if substantial evidence in the record supports a murder conviction under current law"].)

" 'If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause.' " (*People v. Offley, supra*, 48 Cal.App.5th at p. 596, quoting § 1170.95, subd. (c).)  Thereafter, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. . . ." (§ 1170.95, subd. (d)(3).)  "The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (*Ibid.*)

## B.    The Resentencing Court Erred in Denying Rogers's Petition During Its Prima Facie Review

Rogers argues that the resentencing court erred in denying his petition without issuing an order to show cause and holding

11

an evidentiary hearing. He maintains the court impermissibly engaged in factfinding during its prima facie review to conclude that he was guilty of murder as a direct aider and abettor. Respondent argues the court properly found the petition failed as a matter of law because Rogers was prosecuted as a direct aider and abettor. We agree with Rogers.

Given the procedural peculiarities of this case, Rogers's record of conviction did not establish as a matter of law that Rogers was a direct aider and abettor. As we acknowledged in both our direct appeal opinion and our 2003 order, due to the *Beeman* instructional error, neither CALJIC No. 3.00 nor No. 3.01 required the jury to find Rogers intended to commit murder. Thus, nothing in the trial record establishes that Rogers harbored the required mens rea to hold him culpable as a direct aider and abettor. To the contrary, the instructions advised the jury they could convict Rogers if the murder was "the natural and reasonable or probable consequence[ ] of any act that he knowingly aided or encouraged" (CALJIC No. 3.00), and if he acted "with knowledge of the unlawful purpose of the perpetrator" (CAJLIC No. 3.01). These instructions allow for a possibility that the jury convicted him under a natural and probable consequences theory that is no longer valid.

In our 2003 order, we did not determine that the evidence established Rogers harbored malice in the commission of the murder as is now required for a conviction for murder as an aider and abettor. Rather, in applying the harmless error standard for prejudicial error, we considered whether Rogers had " 'the intent to encourage and bring about conduct that is criminal, not the specific intent that is an element of the target offense.' " (*Rogers*, *supra*, B148541, at p. 8.) We applied the existing understanding

12

of the *Chapman* standard to conclude that "the murder verdict surely [was] not attributable to the [instructional] error." (*Rogers*, *supra*, at p. 8.)  We concluded the record showed that Rogers "accompanied the others to the site of the shooting knowing they at least intended to assault rival gang members and intending to encourage and facilitate that criminal conduct." (*Id.* at p. 9.)  Our holding suggests that the facts supported a verdict based on application of the natural and probable consequences doctrine.  (See *People v. Duke* (2020) 55 Cal.App.5th 113, 122, review granted Jan. 13, 2021, S265309 [noting that the harmless error analysis in the direct appeal opinion concluded only that the defendant could have been convicted under the natural and probable consequences doctrine]; cf. *People v. Lewis*, *supra*, 43 Cal.App.5th at pp. 1138-1139 [concluding that the harmless error analysis in the direct appeal opinion foreclosed § 1170.95 relief because "[t]he issue whether [the] defendant acted as a direct aider and abettor had thus been litigated and finally decided against [the] defendant"].)  Thus, nothing in the record of conviction before the resentencing court permitted it to conclusively determine Rogers was a direct aider and abettor.

Accordingly, the matter must be remanded for an order to show cause pursuant to section 1170.95, subdivision (c), and a hearing pursuant to section 1170.95, subdivision (d), during which the parties "may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3).)  We express no opinion on Rogers's ultimate entitlement to relief following the evidentiary hearing.

**DISPOSITION**

The order denying Rogers's petition for resentencing under section 1170.95 is reversed and the matter is remanded to the superior court. On remand, the superior court shall issue an order to show cause and conduct a hearing in accordance with section 1170.95, subdivisions (c) and (d).

NOT TO BE PUBLISHED

FEDERMAN, J.[*]

We concur:

ROTHSCHILD, P. J.

CHANEY, J.

_____

[*] Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.